JaSHORTESS, Judge.
Kym B. Arcuri (Arcuri) and Christine' C. Arcuri were legally separated by judgment dated September 27, 1988. That judgment granted the parties joint custody of their daughters Jennifer and Jessica. They were divorced in June 1989. In July 1989, Mrs. Arcuri petitioned to modify the custody agreement so she could move to Madison, Wisconsin, with the children, although she later decided not to move. Arcuri then moved for sole custody. On November 22, 1989, a stipulated judgment was rendered[1] which maintained the September 1988 custody judgment. The stipulated judgment contained the following provision:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CHRIS *1018 TINE C. ARCURI will not remove the residence or domicile of the minor children from East Baton Rouge Parish for One Hundred Twenty (120) days from November 22, 1989. After this period should she desire to move the children she has the right to request an immediate emergency hearing on the matter upon notice without the requirement of filing additional pleadings. Also to be considered at this immediate emergency hearing is child support, taking into account all relevant factors including KYM B. ARCURI’S travel costs to see the children, should the move be granted.
By 1993, both parties had remarried, and Mrs. Arcuri, now Mrs. Jendrzejewski (Jen-drzejewski), desired to move to Kentucky. A hearing was scheduled for July 16, 1993, without the filing of additional pleadings pursuant to the November 1989 judgment. Before the hearing began, the following colloquy took place between the court and counsel:
MR. FISHBEIN [Jendrzejewski’s counsel]: ... Mr. Cooper and I had requested a status conference with Your Honor.... And I believe that ... this was basically a limited hearing to see whether or not it was in the best interest of the children to move or not to — This is not a final decision with regard to changing custody, it is really limited to the question of whether the children should go to Kentucky....
1.sThe court then inquired about the current status of custody and was informed that there had been no considered decree, that there is a joint custody order, and that Jen-drzejewski is the primary domiciliary parent.
MR. COOPER [Arcuri’s counsel]: ... As I understood the decree, in the event [Jendrzejewski] should request a move there would be a hearing. If there is to be a further matter, I think that it would have to be coming to this Court on new motion or new rule by Mr. Fishbein.
If the Court finds that my client may move with the children, I would refer the Court to Article 146[2] of the Code, Section (k) concerning joint custody and a move out of the state. And I think that is basically all I am here for today. If there are other proceedings they would be ad-versa[rial] and we would require new rules.
MR. FISHBEIN:
[[Image here]]
It was my understanding that this was really just a stopgap method to see whether the children should go or not, but if Mr. Cooper wants me to file another piece of paper, I will be happy to do so ... because this really and truly is a continuing thing. This is not a final decree. It’s merely ... to determine whether or not the children could be removed from the state.... I’ll follow any direction the Court wishes me to follow, but I understand this last meeting to be an interim hearing to make a decision.
THE COURT: Well, the way I understand it, the only issue here today is to determine whether the Court will allow Mrs. [Jendrzejewski]—
[[Image here]]
THE COURT: — to leave the state with the children: And I think that is the only issue that we are hearing today.
MR. FISHBEIN: That’s correct.
THE COURT: If there is anything else, then, of course — I don’t see any pleadings filed for anything else, so we will go on that issue only.
(Emphasis added.)
RThe court then held a hearing at which the only witnesses were the parties, their current spouses, and the former Mrs. Jen-drzejewski. At the conclusion of the hearing, the judge gave oral reasons from the bench which began: “This matter came on for hearing this afternoon on a rule to change the custody arrangement under Article 131, Sub-paragraph K whereby Mrs. Arcuri (Jendrze-jewski) wishes this Court to rule in her favor in order to allow her to move with the children to Kentucky.” He then held joint custody was not in the children’s best interest, awarded sole custody to Jendrzejewski, and ruled Jendrzejewski could move to Kentucky with the children. His signed judgment of September 1, 1993, addressed only custody and visitation; he gave sole care, custody, *1019 and control to Jendrzejewski, subject to liberal visitation rights on behalf of Arcuri, with the visitation plan to be devised by the parties.
Arcuri appeals, contending the trial court erred in adjudicating the issue of permanent custody when that issue was not properly before the court.
At the time this judgment was rendered, custody following a parent’s change of domicile to another state was governed by Louisiana Civil Code article 131K, which provided:[3]
Notwithstanding any provisions of this Article to the contrary, when an award of joint custody has been made to parents domiciled in the state of Louisiana and either parent changes his or her domicile to another state, the presumption that joint custody is in the best interest of a child shall cease to exist. In such ease, either parent may petition for and the court after a contradictory hearing may modify the joint custody award or award sole custody of the child to either parent in accordance with the best interest of the child. Nothing contained herein shall prohibit the parents from continuing joint custody by agreement.
(Emphasis added.)
| gJendrzejewski contends the power of the court to modify custody was inherent in the November 1989 stipulation (that an emergency hearing could be held on the issue of whether to allow her to move out of state with the children without the necessity of filing pleadings). She argues, essentially, that the greater power of the court to modify custody goes with the lesser power to permit change of the children’s domicile. This contention is not supported by the language of the stipulation. The parties saw fit to specify that the emergency hearing would include the issue of child support, including Arcuri’s travel expenses to see the children if the move was permitted. However, the detailed stipulation contains absolutely nothing concerning change of custody at the emergency hearing.
Article 131K required a contradictory hearing to change custody following an interstate move by a parent with joint custody. In this case, Arcuri was deprived of a meaningful contradictory hearing on the custody issue by the trial court’s statement at the beginning of the hearing that the sole issue to be decided was whether Jendrzejewski would be permitted to leave the state with the children. We must assume that Areuri’s choice of exhibits, witnesses, and questions directed to those witnesses was influenced by the court’s statement that custody was not before the court. Thus, the trial court committed legal error in deciding the custody issue after a hearing on another issue.
For the foregoing reasons, the decision of the trial court awarding sole custody of the minors Jennifer Arcuri and Jessica Arcuri to Christine C. Arcuri [Jendrzejewski] is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion. All costs of appeal are taxed to Jendrzejewski.
REVERSED AND REMANDED.

. Although rendered on November 22, 1989, the judgment was not signed and filed until August 17, 1990.

. Civil Code article 146 was redesignated as article 131 by Acts 1990, No. 1008, § 8, and Acts 1990, No. 1009, § 10, both effective January 1, 1991. Article 131 was then revised in 1993. See Footnote 3, infra.

. Civil Code article 131 was revised by Acts 1993, No. 261, § 1, effective January 1, 1994. The new version of that article provides simply: "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child."